2005 SD 11

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**William E. WALDNER, Defendant and Appellant.**

No. 23261.

Supreme Court of South Dakota.

Considered on Briefs Nov. 15, 2004.

Decided Jan. 19, 2005.

Lawrence E. Long, Attorney General, Jeffery J. Tronvold, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Roger W. Ellyson, Watertown, South Dakota, Attorney for defendant and appellant.

ZINTER, Justice.

[¶ 1.] William Waldner appeals his sentences, contending that the State violated the terms of his plea agreement. Because the prosecutor breached a material term of the plea agreement, we vacate the sentences and remand for resentencing before a different judge.

## FACTS

[¶ 2.] On February 20, 2004, Waldner pleaded guilty to a series of charges stemming from burglaries he committed in Clark, Codington, Hamlin and Kingsbury Counties. As part of that transaction, Waldner entered into a written plea agreement with the Clark County State's Attorney in which Waldner agreed to plead guilty to one count of first degree burglary and three counts of third degree burglary. That agreement was filed on February 23, 2004.

[¶ 3.] In exchange for the guilty pleas, the State agreed to dismiss all other Clark County charges and to not file a habitual offender information. Additionally, the plea agreement specifically provided that:

D. The State further agrees to recommend to the Court that any sentence received by the Defendant in Clark County run concurrently with the sentences he will receive on charges pending in Codington County, Hamlin County and Kingsbury County.

E. The parties acknowledge that there is no agreement as to sentencing

and both the Defendant and State of South Dakota are free to offer any recommendation at the time of sentencing; however, the State agrees not to request that the sentences run consecutively.

[¶ 4.] On April 7, 2004, Waldner was sentenced for the Clark, Codington and Hamlin County charges by the Honorable Robert L. Timm. At the sentencing hearing, the Clark County State's Attorney addressed the court and argued the "atrocious" nature of these crimes, stating:

I consider him to be a danger to the public,. I don't think his conduct deserves a life sentence which is one of the reasons why I was more than happy not to file an habitual offender information in this matter. There may be some hope for rehabilitation for this gentleman, your Honor, I'm not sure given his background and his track record that that is possible, but maybe it is, I don't know, but I do think that Mr. Waldner's conduct merits a significant penitentiary sentence and the State of South Dakota would respectfully request that that be the case.

The Clark County State's Attorney did not recommend concurrent sentences during the sentencing hearing as required by the plea agreement. However, defense counsel mentioned:

The agreement that we entered into with the Clark County State's [sic] Attorney involved [him] recommending that the sentences in Clark County run concurrently with the sentences that are imposed in the other three counties, recognizing that that's not at all binding on the Court, but we do appreciate that recommendation. There's no agreement regarding sentencing with Hamlin Coun-

ty or Codington County or Kingsbury County, so I think it's important that the Court realize that.

In pronouncing sentence, the court did not acknowledge the plea agreement recommending concurrent sentences or specifically reject the terms of the agreement. Rather, the trial court indicated "I've read through this presentence report."

[¶ 5.] The presentence investigation report did not include the terms of the plea agreement, and the plea agreement was not attached to the report. Concerning the plea agreement, that report only indicated:

A plea bargain agreement was entered into in this matter whereby upon the defendant entering pleas of guilty to charges of First Degree Burglary and three counts of Third Degree Burglary in Clark County, Grant Theft and Burglary Fourth Degree in Codington County, Third Degree Burglary in Hamlin County and Third Degree Burglary in Kingsbury County, that all other charges would be dismissed and no Habitual Offender Information would be filed.

Thus, it did not disclose the State's agreement to recommend concurrent sentences. In fact, the only mention of concurrent sentences is found under the "Defendant's Comments" section of the report, which only indicated that Waldner would "prefer" concurrent sentences.

[¶ 6.] On the Clark County charges, Waldner received a fifteen year prison sentence for first degree burglary and three, five year prison sentences for the third degree burglaries. Waldner received five year prison sentences on each of the Hamlin and Codington County offenses.[1]

---

1. More specifically, Waldner received a five year sentence for Grand Theft in Codington County and a concurrent two year sentence for Fourth Degree Burglary in Codington County.

All of the sentences were to run consecutive to each other for a total of forty years.[2]

[¶ 7.] Waldner appeals contending that the Clark County State's Attorney violated the terms of the plea agreement by failing to recommend concurrent sentences. Waldner requests that his sentences be vacated and this matter be remanded for resentencing before a different judge.

## ANALYSIS

[¶ 8.] "Generally, plea agreements are contractual in nature and are governed by ordinary contract principles." *State v. Stevenson*, 2002 SD 120, ¶ 9, 652 N.W.2d 735, 738. "When the government fails to fulfill a material term of a plea agreement, the defendant may seek specific performance or may seek to withdraw his plea." *State v. Bracht*, 1997 SD 136, ¶ 6, 573 N.W.2d 176, 178. Waldner contends the State violated the terms of his plea agreement by not recommending that he receive concurrent sentences. The State concedes that it did not recommend concurrent sentences at the sentencing hearing.

[¶ 9.] In *Bracht*, this Court adopted several statements of the United States Supreme Court on this subject. *Id.* ¶ ¶ 7, 11 (citing *Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 499–500, 30 L.Ed.2d 427 (1971)).

> When a plea rests *in any significant degree* on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

> We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the

plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration.

> The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, *in which case petitioner should be resentenced by a different judge*, or whether, in the view of the state court, the circumstances require granting the relief sought by the petitioner, *i.e.*, the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.

*Id.* (emphasis added). Based on *Santobello*, we remanded the sentence in *Bracht* for resentencing before a different judge because the State failed to fulfill its promise in the plea agreement. *Id.* ¶ 13.

[¶ 10.] Here, the terms of the plea agreement created an affirmative obligation for the State's Attorney to recommend to the trial court that the sentences for the Clark County offenses run concurrently with the offenses in Codington, Hamlin and Kingsbury Counties. The agreement also created a prohibition against recommending consecutive sen-

---

**2.** This forty year sentence is contrasted with the fifteen year sentence Waldner would have received if the trial court had ordered concurrent sentences. This is noteworthy only for the purpose of assessing the significance of this term of the plea agreement. We make no determination concerning an appropriate sentence in this case.

tences. We reiterate that "[o]nce a plea has been entered and it 'rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled.'" *United States v. McCray,* 849 F.2d 304, 305 (8th Cir.1988)(quoting *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 427). The State's Attorney did not fulfill that obligation.

■ [¶ 11.] Moreover, this failure to recommend concurrent sentences was a material and substantial breach of the agreement. This negotiated term certainly cannot be characterized as being without "any significance" to Waldner. *See Bracht,* 1997 SD 136, ¶ 7, 573 N.W.2d at 179; *State v. Deilke,* 274 Wis.2d 595, 682 N.W.2d 945, 951 (2004) (stating: "A material and substantial breach of a plea agreement is one that violates the terms of the agreement and defeats a benefit for the non-breaching party."). A failure to recommend concurrent sentences is a material and substantial breach because:

> Undoubtedly, one of the most crucial issues in a plea agreement is the recommendation concerning the length of time to be served on each count. However, whether sentences are to be concurrent or consecutive is also extremely important. The designation of concurrent or consecutive time can affect the actual amount of time served, the application of a pre-sentence credit, parole eligibility dates, the date a defendant is allowed access to rehabilitative services, and other factors. A recommendation of concurrent sentences can also send a signal to the trial court that the agreement contemplates a lesser sentence than one where consecutive sentences are recommended.

*State v. Howard,* 246 Wis.2d 475, 630 N.W.2d 244, 250–51 (App.2001)(internal citation omitted).

■ [¶ 12.] Even if this Court were to speculate that such a recommendation had no effect on the sentence pronounced because defense counsel mentioned the agreement, such speculation is of no legal significance. *Bracht,* 1997 SD 136, ¶ 7, 573 N.W.2d at 179. It is of no significance because, the inquiry is not whether or not the trial court was affected by the breach of the agreement, but whether the State's Attorney met his or her obligation. *See Howard,* 630 N.W.2d at 250 (holding "it is irrelevant whether the trial court was influenced by the State's alleged breach or chose to ignore the State's recommendation."). By pleading guilty a defendant waives very important rights: "He offers that waiver not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court. If they are not adequate the waiver is ineffective." *United States v. Clark,* 55 F.3d 9, 14 (1st Cir.1995).

[¶ 13.] "This phase of criminal justice, and the adjudicative element inherent in accepting a plea of guilty must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 427. "[O]nce the defendant has given up his 'bargaining chip' by pleading guilty, due process requires that the defendant's expectations be fulfilled." *Howard,* 630 N.W.2d at 250. This is because the "agreement by the State to recommend a particular sentence may induce an accused to give up the constitutional right to a jury trial. Consequently, once an accused agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment of the bargain." *State v. Williams,* 249 Wis.2d 492, 637 N.W.2d 733, 744

(2002). "A prosecutor who does not present the negotiated sentencing recommendation to the circuit court breaches the plea agreement." *Id.* "That the breach of the agreement may have been inadvertent does not lessen its impact; the defendant is still entitled to a remedy for the breach." *Howard,* 630 N.W.2d at 251.

 [¶ 14.] In fashioning that remedy we acknowledge that this case does not involve an allegation of intentional breach nor is there evidence that the breach affected the trial court. Nevertheless, the required remedy is a remand for resentencing before a new judge. As stated in *Bracht:*

[W]e hasten to add the same qualification used by the Supreme Court and the Eighth Circuit in similar dispositions: 'We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.' In order to restore him to the position he would have been in before the State's breach, [defendant] must be sentenced by another judge. The new judge might well give the same sentence, but only after the State complies with its promise.[3]

*Bracht,* 1997 SD 136, ¶ 13, 573 N.W.2d at 181.

3. Since 1997 it has been the settled law in the State of South Dakota that the remedy for the breach of a plea agreement is resentencing before a different judge. *Bracht,* 1997 SD 136, ¶ 12, 573 N.W.2d at 180 (citing *Santobello,* 404 U.S. at 263, 92 S.Ct. at 500, 30 L.Ed.2d at 427; *United States v. Brody,* 808 F.2d 944, 948 (2nd Cir.1986); *McCray,* 849 F.2d at 305; *Brunelle v. United States,* 864 F.2d 64, 65 (8th Cir.1988)).

This Court's decision in *Bracht* was a split decision with two dissents arguing that *Santobello* did not necessitate a remand to a different judge for resentencing. *Bracht,* 1997 SD 136, ¶¶ 18–39, 573 N.W.2d at 181–86 (Miller, C.J., dissenting)(Gilbertson, J., dissenting). However, the cases decided after *Bracht* confirm the view expressed by the *Bracht* majority that sentencing should be conducted by a new judge. *See United States v. DeWitt,* 366 F.3d 667, 672 (8th Cir.2004) (stating "our precedent dictates that we vacate the judgment and remand to the district court for resentencing before a different judge"); *United States v. Rivera,* 357 F.3d 290, 297 (3rd Cir.2004) (holding "the defendant must be resentenced by a different judge than the one who presided over the now-vacated original sentence"); *United States v. Mata–Vasquez,* 111 Fed. Appx. 986, 2004 WL 2307343 (10th Cir. 2004) (unpublished opinion); *United States v. Carter,* 57 Fed.Appx. 211, 2003 WL 147728 (5th Cir.2003)(unpublished opinion) (directing resentencing before a different

judge because "[w]e are not at liberty to part from *Santobello*"); *United States v. Franco–Lopez,* 312 F.3d 984, 994 n. 7 (9th Cir.2002) (recognizing "the case law uniformly requires sentencing by a different judge"); *United States v. Fitch,* 282 F.3d 364, 368 (6th Cir.2002) (holding "we are required to remand for resentencing before a different judge"); *United States v. Robbins,* 40 Fed.Appx. 787, 2002 WL 1583905 (4th Cir.2002)(unpublished opinion); *United States v. Mondragon,* 228 F.3d 978, 981 (9th Cir.2000); *United States v. Padilla,* 186 F.3d 136, 143 (2nd Cir.1999)(directing resentencing before a different judge because "reassignment is advisable to preserve the appearance of justice"); *Echeverria v. State,* 119 Nev. 41, 62 P.3d 743, 745 (2003)(rejecting "State's argument that reassignment to a different judge is appropriate only in unusual cases"); *State v. Howland,* 264 Wis.2d 279, 663 N.W.2d 340, 350 (App.2003); *People v. Hoeltzel,* 290 A.D.2d 587, 588, 735 N.Y.S.2d 259 (3rd Div.2002)(holding defendant is entitled to resentencing before a different judge); *State v. Birge,* 2001 WL 968393 (Neb.App.2001) (unpublished opinion); *State v. Lake,* 107 Wash.App. 227, 27 P.3d 232, 236 (2001); *Myers v. State,* 770 So.2d 542, 550 (Miss.App.2000)(stating "the requirement that a different trial judge be involved on remand should be taken as an objective determination about appearances, one that is commanded by *Santobello*"); *State v. King,* 576 N.W.2d 369, 371 (Iowa 1998).

[¶ 15.] Accordingly, we vacate the Clark County sentences and remand for resentencing before a different judge.

[¶ 16.] SABERS, KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 17.] GILBERTSON, Chief Justice, concurs in part and dissents in part.

GILBERTSON, Chief Justice (concurring in part and dissenting in part).

[¶ 18.] I agree with the Court that the prosecutor failed to fully comply with the terms of the plea agreement and for that reason the sentence must be vacated and returned to the trial court for resentencing. However, I dissent from that portion of the Court's opinion that directs upon remand, resentencing is to be taken away from Judge Timm and is to it be held in front of another judge of the Third Judicial Circuit.

[¶ 19.] Herein Waldner finds no fault with the conduct of the judge at the original sentencing. The sole basis of his complaint is the conduct of the prosecutor. This Court is in agreement for it declares, "although this does not involve a question of trial court error ..." and further that "we emphasize that our inquiry is not whether or not the trial court was affected by the breach of the agreement, but whether the State's Attorney met his obligation."

[¶ 20.] The sole basis for the court's action is its continuing misinterpretation of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) as set forth in *State v. Bracht*, 1997 SD 136, 573 N.W.2d 176. *Santobello* states in part:

The ultimate relief to which petitioner is entitled *we leave to the discretion of the state court*, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner[.]

404 U.S. at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433 (emphasis added).

[¶ 21.] "The language quoted above from *Santobello* '*mandates nothing.*'" *Bracht*, 1997 SD 136, ¶ 20, 573 N.W.2d at 182 (Miller, C.J., dissenting) (citing *United States v. Wolff*, 127 F.3d 84, 87 (D.C.Cir. 1997)). *See also United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir.1984); *United States v. Arnett*, 628 F.2d 1162 (9th Cir. 1979); *United States v. Bowler*, 585 F.2d 851, 856 (7th Cir.1978).

Since the inception of this Court, it has from time to time reversed a trial court for errors committed against a criminal defendant which were found to be prejudicial. Yet one must look long and hard to find a case where the remand was designated to be to another judge rather than the original trial court which committed the error. We have assumed that the trial court will correct its original error and not retaliate against the defendant who obtained the reversal from this Court. What then is the justification for continuing on with this procedure and yet automatically ordering a remand to another judge where the error was made by the prosecutor, not the trial court, and not even considered by the trial court?

The cases cited above hold that the defendant must show "unusual circumstances" or some other valid reason in order to require remand for resentencing by a different judge. [*U.S. v.*] *Sharp*, 941 F.2d [811] at 817 [9th Cir. 1991]; [*U.S. v.*] *Heubel*, 864 F.2d [1104] at 1113 [3d Cir.1989]. *Bracht* makes no claim of bias or reliance on impermissible factors by the trial court and the

majority explicitly finds there is none. Therefore Bracht has failed to demonstrate *any* circumstances which require a different judge to conduct his resentencing.

*Bracht,* 1997 SD 136, ¶¶ 37–38, 573 N.W.2d at 185 (Gilbertson, J. dissenting).

[¶ 22.] The same rationale applies here. For the above reasons, I concur in part and dissent in part.