#24848-vac & rem-PER CURIAM

**2008 SD 116**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

v.

ASHLEY DAVID MORRISON,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
MELLETTE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE LORI S. WILBUR
Judge

* * * *

LAWRENCE E. LONG
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                            Attorneys for plaintiff
                                                and appellee.

TERRY L. PECHOTA
Pechota Law Office
Rapid City, South Dakota                        Attorney for defendant
                                                and appellant.

* * * *

                                                CONSIDERED ON BRIEFS
                                                ON NOVEMBER 3, 2008

                                                OPINION FILED **12/03/08**

PER CURIAM

## ACTION

[¶1.]     Alleging that the State breached the terms of his plea agreement, Ashley David Morrison (Morrison) appeals his sentence. Morrison requests that his sentence be vacated and the matter be remanded for resentencing before a different judge.

## FACTS

[¶2.]     Morrison was charged with a violation of SDCL 22-22-7, sexual contact with a child under sixteen.[1] Morrison and the states attorney reached a plea agreement. The plea agreement, as contained in the presentence report and referenced by Morrison in his appeal brief, reads:

> Plead guilty to Sexual Contact with a Child Under Sixteen Years of Age, *the State will not object to his request for a Suspended Imposition of Sentence.* The State is recommending that the defendant serve 180 days in the penitentiary as a condition of a probationary sentence. Both parties are free to speak at sentencing.

(Emphasis added.)

[¶3.]     The complete record of the states attorney's comments, and Morrison's objection, is as follows:

> STATES ATTORNEY: Thank you, Your Honor. Well, this case here is disturbing, to say the very least. The thing more disturbing to me than any part of it was I agreed with Mr. Pechota [Morrison's counsel] – I talked to the family first – that I'd recommend suspended imposition of sentence. That was before I read his [Morrison's] version of it in the presentence investigation. And I'm not going to break my word. I don't

---

1.    The facts of Morrison's criminal charge are irrelevant to the issue raised on appeal.

know if the family would want me to. And I don't want to go through with a trial with it, not that we couldn't. But when I read the presentence report and read his version of it, it was like a fairy tail [sic]. He didn't accept any responsibility.

In the federal system you get two points for accepting responsibility. He would have never got that at all. And it disturbed me then. But I'm not the person going to back out of a deal that I made with Terry, with Attorney Pechota. I respect Terry. And Terry didn't know what would be in this thing no more than I did. I would have to think maybe Terry was a little surprised when he read his version of it here because we've gone through a preliminary and had a pretty good investigator in this case. And so I'm not backing out of the deal. I'm surely disappointed in his version of it at the presentence here. If I would have thought that was going to happen that way, I'm not sure I would have even agreed to recommend. But of course recommending doesn't mean you're going to accept it anyhow, and we go into it knowing that.

But I was surely disappointed in his version of it, in the presentence. And, if I recollect, that he pled – changed his plea. There wasn't any indication that he was going to be doing something like this. But he did it. I'm not going to back out of my recommendation for suspended imposition. But, again, he was told then and we all know – the attorneys knows [sic] that just because we make a recommendation doesn't mean you're going to accept it.

MR. PECHOTA [Morrison's counsel]: I mean, I have to object to that because I don't think – I mean we just had a case out of this South Dakota Supreme Court just last week. I don't think that you can backhandedly, you know, back out of a recommendation and a plea agreement that you've entered into. So I've sort of sat here and I thought that, you know, a brief comment was okay. But I mean I think that the state's attorney [sic] is going out of his way to underhandedly – well, not underhandedly, but through the back door trying to renege on the plea agreement in this case.

THE COURT: Are you reneging on the plea agreement?

STATES ATTORNEY: Of course I'm not. I'm not reneging on it. I just said that I wasn't – I'm going to, so I'm not reneging on it. I'm not doing that. I would have come right out and said it. I just said I'm disappointed in his version of it. I'm not reneging

- 2 -

on it, but I'm sure – it's correct, it's up to her to accept it anyhow. We all know that. I know it. You know it. Ask, your the client knows it. [sic]

MR. PECHOTA: But your comments – you're the executive branch. The Court is the judicial branch. And they are affected by your comments, the judicial branch is, as I think they have to have some concern for what your position is just in our form of government. So but anyway –

THE COURT: Anything further?

MR. PECHOTA: No, Your Honor.

[¶4.] The court sentenced Morrison to ten years in the South Dakota Penitentiary with five years suspended, plus additional conditions. Morrison appeals his sentence contending that the State violated the plea agreement. Morrison requests that his sentence be vacated and the matter be remanded for resentencing before a different judge.

## ISSUE

**Whether the State's Attorney breached the plea agreement not to resist defendant's request for a suspended imposition of sentence.**

## ANALYSIS AND DECISION

[¶5.] "Generally, plea agreements are contractual in nature and are governed by ordinary contract principles." State v. Waldner, 2005 SD 11, ¶8, 692 NW2d 187, 190 (quoting State v. Stevenson, 2002 SD 120, ¶9, 652 NW2d 735, 738). "Like all contracts, [plea agreements] include [ ] an implied obligation of good faith and fair dealing." Erickson v. Weber, 2008 SD 30, ¶27, 748 NW2d 739, 746 (quoting

Vanden Hoek v. Weber, 2006 SD 102, ¶14, 724 NW2d 858, 862 (alterations original) (citations omitted)).

> "[O]nce the defendant has given up his 'bargaining chip' by pleading guilty, due process requires that the defendant's expectations be fulfilled." State v. Howard, 630 NW2d 244, 250 (WisCtApp 2001). This is because the "agreement by the State to recommend a particular sentence may induce an accused to give up the constitutional right to a jury trial. Consequently, once an accused agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment of the bargain." State v. Williams, 637 NW2d 733, 744 (Wis 2002). . . . "That the breach of the agreement may have been inadvertent does not lessen its impact; the defendant is still entitled to a remedy for the breach." Howard, 630 NW2d at 251.

Waldner, 2005 SD 11, ¶13, 692 NW2d at 191-92. "When the State breaches the terms of a plea agreement, the proper remedy is remand for resentencing before a new judge." Vanden Hoek, 2006 SD 102, ¶25, 724 NW2d at 865.

[¶6.]      "[T]he inquiry is not whether or not the trial court was affected by the breach of the agreement, but whether the [s]tates [a]ttorney met his or her obligation." Waldner, 2005 SD 11, ¶12, 692 NW2d at 191. "We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." Vanden Hoek, 2006 SD 102, ¶25, 724 NW2d at 865.

[¶7.]      While Morrison contends that the State's only obligation was to not object to or resist his request for a suspended imposition of sentence, the State concedes a more stringent obligation:

> A review of the record exhibits that the specifics of the plea agreement were acknowledged by the state's attorney to the court, namely, *that a recommendation for a suspended imposition would be made*. The State may not have

enthusiastically fulfilled its obligation under the plea agreement, but it did fulfill it.

Appellee's Brief, p13 (emphasis added). Considering the transcript, it is not clear that the State fulfilled either of these obligations in good faith.

[¶8.]    Initially, the states attorney was under no obligation to enter into a plea agreement. The states attorney, of his own volition, offered a plea agreement and it was accepted by Morrison. After the agreement, the states attorney was under an obligation not to object to Morrison's request for a suspended imposition of sentence, or, as the State suggests, to recommend the suspended imposition *itself*. The State was required to carry out these obligations in good faith.

[¶9.]    Morrison was under no obligation to admit to any particular set of facts during the presentence investigation. Morrison was required to plead guilty, which he did at a prior hearing. While Morrison's comments during the presentence investigation tend to blame the victim, he was not equivocal about his criminal guilt. Morrison performed his obligations under the plea agreement.

[¶10.]    The states attorney was "disappointed" by statements made by Morrison during the presentence investigation[2] and grew wary of the plea agreement. The states attorney then conveyed his discomfort and doubts to the sentencing court. The states attorney, in his earliest words to the court, phrases his

---

2.    Morrison's description of the criminal incident in the presentence investigation repeats his statements made to the Department of Criminal Investigations officer during a recorded telephone conversation. While Morrison's adherence to this description may "disappoint" the states attorney, it should not surprise him. As a matter of the obligations under the plea agreement, Morrison's interpretation of his *moral* culpability, or lack thereof, does not bear on his admission of *criminal* guilt.

discontent with the plea agreement as more disturbing to him than the underlying criminal conduct – sexual contact with a child.[3]

[¶11.]     While the agreement was not explicitly reneged,[4] the State *impliedly* argued for a tougher sentence by voicing its discomfort with a suspended imposition. The statements, taken as a whole, encourage the sentencing court to disregard the State's recommendation of a suspended imposition of sentence or at least are resistant to the suspended imposition. "The State's 'rhetoric was not rhetorical,' and instead amounts to a 'transparent effort to influence the severity of the defendant's sentence,' without fulfilling its end of the bargain." *Vanden Hoek*, 2006 SD 12, ¶23, 724 NW2d at 864 (citing State v. Bracht, 1997 SD 136, ¶9, 573 NW2d 176, 179 (quoting United States v. Miller, 565 F2d 1273, 1276 (3dCir 1977) (Stern, District Judge, dissenting))). The State breached the plea agreement when it did not fulfill its end of the bargain in good faith.

---

3.     "Thank you, Your Honor. Well, this case here is disturbing, to say the very least. *The thing more disturbing to me than any part of it* [this case] was I agreed with Mr. Pechota . . . that I'd recommend suspended imposition of sentence." (Emphasis added.)

It should be noted that the states attorney repeatedly refers to an agreement between Mr. Pechota and himself. The plea agreement is between the State and *Morrison*.

4.     The State argues that a "bright line" was drawn on this issue because the sentencing court directly asked the states attorney whether he was reneging or not. This "bright line" question and answer, it is suggested, factually distinguishes Morrison's case from prior cases and resolves the issue of the breach of the plea agreement. Whatever "remedial" effect such questioning may have had is insufficient to satisfy Morrison's due process rights. Furthermore, such a question and answer does not resolve the breach of good faith.

[¶12.]	"In order to preserve the integrity of plea bargaining procedures and public confidence in the criminal justice system, a petitioner is generally entitled to the enforcement of a plea agreement without showing a tangible harm resulting from that breach."  Baldridge v. Weber, 2008 SD 14, ¶34, 746 NW2d 12, 20 (quoting United States v. Vaval, 404 F3d 144, 155 (2dCir 2005)).  Because the State breached the plea agreement, Morrison was not afforded a fair and reliable sentencing proceeding.

[¶13.]	Morrison's sentence is vacated and the case remanded for resentencing by a different judge.

[¶14.]	GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.