#27577-r-LSW

**2016 S.D. 54**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

LISA BETH SLOTSKY,                        Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
GREGORY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE KATHLEEN F. TRANDAHL
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


SANDY J. STEFFEN
Gregory, South Dakota                     Attorney for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 25, 2016
REASSIGNED
JUNE 30, 2016
OPINION FILED **07/27/16**

WILBUR, Justice (on reassignment).

[¶1.]    Lisa Slotsky agreed to plead guilty to a charge of unauthorized ingestion of a controlled substance in exchange for the State dismissing the remaining charges. The State also agreed to recommend a light sentence with no jail time. The circuit court sentenced Slotsky to five years in prison with one year suspended. Slotsky appeals her sentence, arguing that the State breached the plea agreement. We reverse and remand for resentencing.

## Background

[¶2.]    After a traffic stop for speeding in March 2015, the State charged Slotsky with unauthorized ingestion of a controlled substance, driving under the influence, driving while license is revoked, and speeding. Slotsky pleaded not guilty. In August 2015, the circuit court held a change-of-plea hearing. At the hearing, counsel for Slotsky indicated that Slotsky "will plead guilty to the ingestion charge in Count I. And the court - - or, the State will make a recommendation of Hope Court with no jail time." The State also agreed to dismiss the remaining charges. The court accepted Slotsky's guilty plea.

[¶3.]    In September 2015, the circuit court held a sentencing hearing. At the hearing, counsel for Slotsky argued that Hope Court would be an appropriate sentence to rehabilitate Slotsky and to help her overcome her addiction. When the court asked for the State's response, the State explained that Hope Court "was going to be my recommendation[,] . . . [b]ut, shortly after that plea was entered, it's concerning to me the charges that were filed against her in Tripp County, mostly because those aren't another substance-abuse charge; those are serious felonies[.]"

The State also emphasized that Slotsky's criminal history suggests that Slotsky may not be "able to maintain any type of long-term sobriety once Hope Court is over for her." The State also asserted that Slotsky's history and the charges in Tripp County raise "red flags about her ability to, not necessarily be clean and sober, but her ability to maintain laws and not cause harm to other people in the community[.]" The State asked the court to "consider that in imposing any type of sentence."

[¶4.] Slotsky objected and asserted that the "plea agreement, stated on the record, was that [the State] would do this plea . . . and this whole line of argument is going against what the plea agreement was." The State responded, "I stated initially I still don't have an objection to her being placed on Hope Court, but I think I have a right to have my concerns on the record for any matter in to the future." It further contended, "And I have not asked her to be placed in the penitentiary for any period of time." The circuit court sentenced Slotsky to five years in prison with one year conditionally suspended. Slotsky appeals, asserting that the State breached the plea agreement.

## Analysis

[¶5.] When analyzing whether the State breaches a plea agreement, we apply ordinary principles of contract law. *State v. Waldner*, 2005 S.D. 11, ¶ 8, 692 N.W.2d 187, 190. "Like all contracts, plea agreements include an implied obligation of good faith and fair dealing." *State v. Morrison*, 2008 S.D. 116, ¶ 5, 759 N.W.2d 118, 120 (quoting *Erickson v. Weber*, 2008 S.D. 30, ¶ 27, 748 N.W.2d 739, 746). Therefore, "[w]hen the government fails to fulfill a material term of a plea

agreement, the defendant may seek specific performance or may seek to withdraw his plea." *State v. Bracht*, 1997 S.D. 136, ¶ 6, 573 N.W.2d 176, 178 (quoting *United States v. Barresse*, 115 F.3d 610, 612 (8th Cir. 1997)).

[¶6.]       Here, Slotsky contends that the State breached the plea agreement when the State failed to recommend Hope Court and no jail time.  According to Slotsky, the State impliedly argued for a harsher sentence.  In response, the State asserts that it "did not renege on any deal by implicitly arguing for a tougher penalty at sentencing."  In the State's view, it upheld its end of the plea agreement because it did not object to Slotsky being placed in Hope Court and it never argued that Slotsky be sentenced to the penitentiary for any length of time.

[¶7.]       "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971); *Waldner*, 2005 S.D. 11, ¶ 9, 692 N.W.2d at 190.  This is because, by pleading guilty, the defendant gives up her bargaining power.  So "[o]nce the defendant has given up his 'bargaining chip' by pleading guilty, due process requires that the defendant's expectations be fulfilled." *Morrison*, 2008 S.D. 116, ¶ 5, 759 N.W.2d at 120 (quoting *Waldner*, 2005 S.D. 11, ¶ 13, 692 N.W.2d at 191-92).  And it does not matter if the State breaches the plea agreement inadvertently; "the defendant is still entitled to a remedy for the breach." *Id.*  Also, we do not examine whether the circuit court was in fact influenced by the breach of the agreement.  *Id.* ¶ 6.  The inquiry is whether the State met its obligation.  *Id.*

[¶8.]      Based on our review, the plea agreement required the State to recommend that Slotsky be placed in Hope Court and that she receive no jail time. At sentencing, instead of recommending Hope Court and no jail time, the State highlighted and detailed Slotsky's criminal history and suggested that Slotsky would be unable to maintain sobriety or obey the laws and not cause harm in the community. As we recognized in *Morrison*, by impliedly arguing for a harsher sentence, the State in effect asked the circuit court to disregard the State's recommendation under the plea agreement. *Id.* ¶ 11. And the State's characterization of its remarks as not "opposing" Hope Court or no jail time is nothing more than "a 'transparent effort to influence the severity of the defendant's sentence,' without fulfilling its end of the bargain." *Id.* (quoting *Vanden Hoek v. Weber*, 2006 S.D. 102, ¶ 23, 724 N.W.2d 858, 864). The State's failure to recommend Hope Court and no jail time is a material and substantial breach of the plea agreement.

[¶9.]      "We need not reach the question whether the sentencing judge would or would not have been influenced[.]" *Waldner*, 2005 S.D. 11, ¶ 9, 692 N.W.2d at 190 (quoting *Bracht*, 1997 S.D. 136, ¶ 7, 573 N.W.2d at 179). "[S]uch speculation is of no legal significance"—"the inquiry is not whether or not the trial court was affected by the breach of the agreement, but whether the State's Attorney met his or her obligation." *Id.* ¶ 12. "We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." *Bracht*, 1997 S.D. 136, ¶ 11, 573 N.W.2d at 180 (quoting *Santobello*, 404 U.S. at 263, 92 S. Ct. at 499). Because the State breached the plea

agreement, "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration." *Id.* ¶ 7.

[¶10.]     In 1997, this Court thoroughly considered the remedy for a breach of a plea agreement in *Bracht*, 1997 S.D. 136, 573 N.W.2d 176. We recognized that the United States Supreme Court, in *Santobello*, "outlined" certain remedies. *Id.* ¶ 11 (quoting *Santobello*, 404 U.S. at 263, 92 S. Ct. at 499). We then exercised our discretion and adopted the view that, in a case where the relief involves specific performance of a plea agreement, the remedy is resentencing before a different judge. *Id.* ¶ 12. We deemed this remedy necessary "to create a consequence for a prosecutor's broken promise" and to avoid the potential of "making the prosecutor's breach a clear harmless error[.]" *Id.* ¶ 12 n.1. "In order to restore him to the position he would have been in before the State's breach, [the defendant] must be sentenced by another judge." *Id.* ¶ 13.

[¶11.]     Since *Bracht*, this Court has consistently applied that "sound logic" when the State breaches a plea agreement. *Waldner*, 2005 S.D. 11, 692 N.W.2d 187; *Vanden Hoek*, 2006 S.D. 102, 724 N.W.2d 858; *Morrison*, 2008 S.D. 116, 759 N.W.2d 118. And we have done so despite arguments similar to today's dissenting argument asserting that *Santobello* does not necessitate remand to a different judge for resentencing. *See Vanden Hoek*, 2006 S.D. 102, 724 N.W.2d 858 (Gilbertson, C.J., concurring in part and dissenting in part); *Waldner*, 2005 S.D. 11, 692 N.W.2d 187 (Gilbertson, C.J., concurring in part and dissenting in part); *Bracht*, 1997 S.D.

136, 573 N.W.2d 176 (Gilbertson, J., concurring in part and dissenting in part). Therefore, it is of no consequence that *"Bracht* was not an instance of this Court exercising the discretion granted by *Santobello*[.]" Dissent ¶ 19. What matters is that this Court has on all previous occasions specifically declined to depart from its view that the remedy for a breach of a plea agreement is remand to a different judge for sentencing. *Waldner*, 2005 S.D. 11, ¶ 14 n.3, 692 N.W.2d at 192 n.3 ("the cases decided after *Bracht* confirm the view expressed by the *Bracht* majority that sentencing should be conducted by a new judge"). There is no need to "determine a different method of determining remedy."[1] Dissent ¶ 20. We vacate Slotsky's sentence and remand for resentencing before a different judge.

---

1. The three-factor test proposed by the dissent from *United States v. Robin* does not arise out of a case involving a breach of a plea agreement, and the Second Circuit Court of Appeals did not discuss *Santobello*. 553 F.2d 8 (2d Cir. 1977); *United States v. Robin*, 545 F.2d 775 (2d Cir. 1976). In contrast, in a case involving a breach of a plea agreement, the Second Circuit Court of Appeals cited to *Santobello* and held that once the government breaches its agreement to take no position at sentencing "compliance with the agreement is best assured by requiring resentencing before another district judge." *United States v. Corsentino*, 685 F.2d 48, 52 (2d Cir. 1982). Similarly problematic, no case cited by the dissent supports its claim that resentencing by a different judge is an exceptional remedy when the government breaches a plea agreement. This is likely because the cases cited by the dissent do not involve breaches of plea agreements. *See, e.g., United States v. Kennedy*, 682 F.3d 244 (3d Cir. 2012) (remand to a different judge because the sentencing judge did not abide by the appellate court's mandate on first remand); *United States v. Awadallah*, 436 F.3d 125, 137 (2d Cir. 2006) (limiting the scope of trial testimony grand jurors will be permitted to hear regarding the defendant's demeanor before the grand jury); *United States v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777 (9th Cir. 1986) (examining whether a superseding indictment broadened the original indictment). Even if the dissent is correct—that applying a three-factor test before remanding to a different judge would not violate *Santobello—this Court* has rejected any invitation to depart from its bright-line remedy in a case involving a breach of a plea agreement.

[¶12.]     Reversed and remanded.

[¶13.]     ZINTER, SEVERSON, and KERN, Justices, concur.

[¶14.]     GILBERTSON, Chief Justice, concurs in part and dissents in part.


GILBERTSON, Chief Justice (concurring in part and dissenting in part).

[¶15.]     I agree with the majority opinion in that the State breached the plea agreement and the defendant should be resentenced.  I part with the majority opinion where it holds that remanding to a different judge is necessary.  I would not depart from this Court's regular procedure and would remand to the same judge.

[¶16.]     The majority opinion cites to *Bracht* and the cases that follow to support its contention that remand to a different judge is required.  Majority opinion ¶¶ 10-11.  However, *Bracht* and the cases since are based on the mistaken assumption that this result is constitutionally mandated by *Santobello*, 404 U.S. at 263, 92 S. Ct. at 499.  The crux of *Santobello* is that state courts have discretion in determining appropriate remedies for a criminal defendant when the state breaches a plea agreement.  "The ultimate relief to which petitioner is entitled we leave to the discretion of the state court[.]"  *Id.*  The opinion then lists possible remedies the state court could pursue, which include requiring specific performance of the plea bargain via resentencing by a different judge or allowing the defendant to withdraw the plea.  *Id.*  The language of the opinion does not state that these are the only remedies permitted by the Constitution.  Additionally, *Santobello* discussed how the process of plea-bargaining "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.  *Those circumstances will vary*, but a

constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor . . . such promise must be fulfilled." *Santobello*, 404 U.S. at 262, 92 S. Ct. at 499 (emphasis added). This language indicates a spectrum of acceptable remedies upon a prosecutor's breach of a plea bargain, not a rigid choice of remanding before a different judge or withdrawal of a plea.[2] The only constant required is that the State must fulfill its bargain.

[¶17.] The Eighth Circuit has also held that *Santobello* does not mandate a per se rule of remanding to a different judge in *United States v. Funchess*, 422 F.3d 698, 704 (8th Cir. 2005). In *Funchess,* the district court improperly computed the defendant's base-level offense for purposes of sentencing, and the Eighth Circuit rejected the defendant's argument that *Santobello* required remand to a different judge. *Id.* While not a breach-of-plea case such as this, the court held that the important factor in *Santobello* was whether the judge had been exposed to prejudicial information. "In this matter, unlike *Santobello,* the district court was not exposed to information that would unduly prejudice resentencing and there is no evidence that the district court's decision-making would be tainted by the previous sentencing. As a result, this case, insofar as it is remanded, should not be reassigned." *Id.* This case presents a similar distinction from *Santobello,* as

---

2.  While many courts have remanded to a different judge in breach-of-plea-cases, many have done so without a great deal of analysis. These cases simply assert the conclusion without analyzing whether the outcome is actually mandated by *Santobello. E.g.*, *United States v. Navarro*, 817 F.3d 494, 503 (7th Cir. 2016); *United States v. Dawson*, 587 F.3d 640, 648 (4th Cir. 2009); *United States v. Cudjoe*, 534 F.3d 1349, 1357 (10th Cir. 2008); *United States v. Cachucha*, 484 F.3d 1266, 1271 (10th Cir. 2007); *United States v. Mosley*, 505 F.3d 804, 812 (8th Cir. 2007); *United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000).

nothing that the prosecutor said revealed information that was not already available in the presentence investigation report.

[¶18.]	Additionally, other federal circuits have rejected the conclusion that *Santobello* requires one of only two remedies on remand.  In *United States v. VanDam*, the court held that while remand to a different judge is the usual remedy, *Santobello* does not require it in all cases.  493 F.3d 1194, 1206 (10th Cir. 2007), The tenth circuit ruled similarly in *United States v. Oakes*, holding that the general rule of remand to a different judge is not a rigid rule, and remand to the same judge is allowed.  680 F.3d 1243, 1247 (10th Cir. 2012).

[¶19.]	The majority opinion seems to concede that *Santobello* does not require remand to a different judge but allows the states discretion.  *Bracht*, the majority opinion argues, is this Court exercising that discretion and choosing to remand to a different judge.  However, this conclusion misreads the *Bracht* holding.  *Bracht* was not an instance of this Court exercising the discretion granted by *Santobello*, but rather was this Court improperly concluding that *Santobello* requires remand to a different judge in breach-of-plea cases.  "However, in order to create a consequence for a prosecutor's broken promise, *Santobello requires* resentencing before a different judge."  *Bracht*, 1997 S.D. 136, ¶ 12 n.1, 573 N.W.2d 176, 180 n.1 (emphasis added).  "We have an obligation to obey the law and to yield to superior authority.  *How can we legitimately refuse to follow direct precedent* from the United States Supreme Court on a constitutional issue flowing from an identical set of facts?"  *Id.* (emphasis added).  "[T]here is a sound and logical rationale for *Santobello*'s *requirement of resentencing by a different judge.*"  *Id.* (emphasis added).

As *Bracht* and the cases that follow it base their holdings on the mistaken premise that *Santobello* requires reassignment in all breach-of-plea-agreement cases, they are of little precedential value and should be overruled. The majority opinion cannot now hold that *Santobello* allows the state discretion in choosing remedies—a conclusion inconsistent with *Bracht* and its progeny—while simultaneously holding up the result in these cases as binding precedent.

[¶20.]        As *Santobello* does not require remanding to a different judge, as this Court's previous cases incorrectly hold, the Court must determine a different method of determining remedy. "Remanding a case to a different judge is a serious request rarely made and rarely granted." *Awadallah*, 436 F.3d at 135. "In the absence of proof of personal bias, we remand to a new judge only under 'unusual circumstances.'" *Sears, Roebuck & Co.,* 785 F.2d at 780 (quoting *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1979). "[R]eassignment is an exceptional remedy, one that we weigh seriously and order sparingly." *Kennedy*, 682 F.3d at 258 (analyzing whether federal statutes would require reassignment on remand). The factors from the oft-cited *Robin*, 553 F.2d at 10, are appropriate for determining when one of these rare instances arises:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected,
>
> (2) whether reassignment is advisable to preserve the appearance of justice, and
>
> (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*See also Bracht*, 1997 S.D. 136, ¶ 28, 573 N.W.2d at 183 (Gilbertson, J., dissenting).

[¶21.]	Applying the three factors from *Robin* to this case, I do not think reassignment is necessary.  Regarding the first factor, there was nothing erroneous about the trial judge's decision—the fault lies entirely with the prosecutor.  Thus, there would be nothing for the judge to put out of his mind on remand.

[¶22.]	Regarding the second factor, the appearance of justice can be preserved with the same judge.  Again, the defendant was not wronged by any action by the judge.  Once the State fulfills its end of the bargain, the injustice inflicted upon the defendant will be remedied.  Changing judges will not help this process.

[¶23.]	Finally, remanding to a different judge would entail assigning a judge unfamiliar with the case for sentencing.  This would invariably cause inefficiency that would not occur if the same judge were assigned.  The waste of judicial resources would far outweigh any perceived unfairness.

[¶24.]	I acknowledge that *Robin* and the other cited cases here do not involve breach-of-plea agreements.  However, if *Santobello* does not require reassignment, a premise the majority opinion appears to accept, then there is no reason why breach-of-plea cases cannot use *Robin's* test to determine whether reassignment is warranted.  On a standard case where a judge makes a mistake that requires remand, we do not reassign, yet here we hold reassignment to be mandatory while emphasizing the innocence of the judge.  *State v. Lohnes* exemplifies this inconsistent approach.  344 N.W.2d 686, 688 (S.D. 1984).  In *Lohnes*, the trial judge accepted a defendant's guilty plea, and subsequently promised not to sentence the defendant to life in prison.  *Id.*  The judge then sentenced the defendant to 347 years in prison.  *Id.*  We emphasized "the trial court was bound to honor its

promise" and held the sentence to be a breach of that promise, as the defendant had understood his plea to mean he would at some point be entitled to release, not just eligible for parole. *Id.* at 688-89. Despite this breach, we remanded to the same judge that breached his promise. *Id.*; *see also State v. Shumaker*, 2010 S.D. 95, ¶ 12, 792 N.W.2d 174, 177 (remanding to the same judge, even where judge had not sentenced defendant within the bounds of a binding plea agreement); *State v. Reaves*, 2008 S.D. 105, ¶ 11, 757 N.W.2d 580, 584 (remanding to the same judge where judge accepted plea agreement but then sentenced defendant to term outside of binding plea agreement's terms). Yet, in cases where "[w]e emphasize that this is in no sense to question the fairness of the sentencing judge" we remand to a different judge. *Bracht*, 1997 S.D. 136, ¶ 13, 573 N.W.2d at 181 (quoting *Santobello*, 404 U.S. at 263, 92 S. Ct. at 499).

[¶25.]        These cases illustrate the inconsistency of the majority opinion's reasoning. How can we hold that the sentencing judge is capable of setting aside bias when she was responsible for a breached plea bargain but incapable when the breach was in no way her fault? A better approach would be to apply the *Robin* factors on a case-by-case basis, regardless of who breached the agreement. I would remand to the same judge who previously sentenced the defendant.